The next case up this morning, 21-2730 and 21-2989, U.S. v. Johnson and Ferreira. Good morning, Ms. White. Good morning. Whenever you're ready. Anessa Fierro and Willie Johnson grabbed a jug of gasoline, walked a few blocks east, and damaged the entrance to two buildings in downtown Madison by breaking windows, pouring gasoline, and at one of the buildings successfully lighting a fire. The question that this appeal presents is whether the statute that allowed them to be walked past the Dane County Courthouse to the federal courthouse falls within the ambit of the Commerce Clause. And here's the one point that I'd like to make today. The mere presence of the words interstate commerce in a statute don't guarantee that that statute is authorized by the Commerce Clause. The jurisdictional element has to do the work that the Commerce Clause demands, and the jurisdictional element in Section 844I doesn't do that work. I've been thinking of a lot of examples over the course of the past year as I've been briefing this, and one that often comes to mind for me is a pen. If I use this pen to write my rent check, then I then walk downstairs to my landlord, who lives on the flat beneath mine, and someone then attempts to light this pen on fire, they have just maliciously attempted to damage or destroy a piece of property that has been used in an activity that affects interstate commerce, and they're facing a mandatory five-year stay in federal prison. That's what the plain language of Section 844I allows, and that is not what the Commerce Clause allows. The Commerce Clause requires, under the third category of Lopez, it requires the statute to regulate an economic activity that has a substantial effect on interstate commerce, and Section 844I does not regulate an economic activity at all, and it does not regulate an activity that has a substantial effect on interstate commerce. So 844I is simply too broad. It isn't as limited as the Commerce Clause requires. One question that others have asked me as I've been preparing for this argument is why I have framed this as a facial challenge to the statute instead of an as-applied challenge. Back when I was first drafting the motion to dismiss in this case, I read through the Commerce Clause case law, I considered it, and I came to the conclusion that there is no such thing as an as-applied challenge under the Commerce Clause. When you think about as-applied challenges, they are generally brought within the context of the Bill of Rights. They're talking about individual rights and whether a statute that is constitutional, that was passed under the authority granted to Congress under the Constitution, is nevertheless unconstitutional in its application to a specific individual or a group of individuals because it infringes on individual rights that are guaranteed by the Bill of Rights in the Constitution. That's not what we have here. The Commerce Clause doesn't guarantee individual rights. It grants Congress a specific right to legislate and regulate commercial activity, and the Tenth Amendment makes very clear that Congress does not have the right to pass laws outside those bounds. And so when we're talking about a Commerce Clause challenge, we're talking about an on-off switch. Did Congress have the power to pass this law or did it not? Ms. White, I take your point that we sometimes, under the current Commerce Clause jurisprudence from the Supreme Court, end up with some rather interesting results. You know, that a rent check can invoke the Commerce Clause, but a mortgage check to your bank out of state does not. So I take your point. You made that with the pen example. It would be helpful if you could point to any case where there was a jurisdictional element tied to commerce and the statute was still struck down as unconstitutional and unconstitutional exercise of the Commerce Clause by Congress. I cannot point to a Supreme Court case striking down as facially invalid a statute that has a jurisdictional element. However, there are district court cases that have done so. I believe there is a statute that governs interference with law enforcement activities during civil disobedience that I believe has been found unconstitutional by at least one district court. And I would also point to Odom, the 11th Circuit opinion that's cited in all three briefs in this case, in which the 11th Circuit explicitly refrained from addressing the facial validity of 844I and instead found that the activity at issue did not qualify. There was insufficient evidence to allow for an 844I prosecution. And that case, reading that opinion, it seems to me that the 11th Circuit was very interested in avoiding what it viewed to be a tricky constitutional question and did so by finding insufficient evidence for the particular prosecution there. And that's exactly what happened in Jones as well. The Supreme Court made very clear that it was not addressing the constitutional question and instead found that an owner-occupied property did not qualify under Section 844I to be federally prosecuted. And not only did the majority opinion make clear that it was not answering the constitutional question, but two justices chose to write separately to really highlight the fact that they were not addressing the constitutionality of Section 844I. And I would echo the comments of Mr. Bugney earlier this morning when he pointed out that, yes, a circuit split would be created. The same is true here. Were this court to find in favor of the defendants and reverse the district court's opinion, it would create a circuit split. Granted, the vast majority of the circuits have not addressed the issue of the facial validity of Section 844I, but were that circuit split to be created, I think we have a good idea of how the Supreme Court and the current justices on the Supreme Court would consider this question. And Justice Thomas has made fairly clear that he views Commerce Clause powers quite narrowly and suggested that 844I does not fall within the ambit of Commerce Clause authority. I'd also like to address the rational basis test, because I think that the use of the rational basis test— That's right. I don't mean to interrupt, but you are in your rebuttal time, which is fine if you want to use it, but you're in it. No, I will reserve the rest of the time. Thank you. Thank you. Mr. O'Gersma, good morning. Good morning, Your Honors. Good morning. My name is Chad O'Gersma. I'm an assistant U.S. attorney out of the Western District of Wisconsin. I represent the United States in this matter. Contrary to the appellant's position, the federal arson statute, 18 U.S.C. 844I, is constitutional. It's constitutional because the Commerce Clause empowers Congress to regulate activities that have a substantial effect on interstate commerce. That is one of the three categories outlined in U.S.B. Jones. When questions arise regarding statutes that regulate activities falling within this category, Morrison is instructive. Morrison outlines four significant considerations that courts should incorporate into their analysis. As the appellant pointed out, it's the most applicable and arguably the most important of the Morrison considerations is the jurisdictional element. 844I's jurisdictional element perfectly conforms with Congress's will. It requires a case-by-case, fact-by-fact, instrumentality-by-instrumentality analysis each time it's charged by the government. That comes from the Sixth Circuit in Blayton. What else do we know about 844I's jurisdictional element? We know that it ties a regulated activity, so it ties arsons, directly to Congress's authority over interstate commerce. That comes, albeit dicta, but it comes from the Supreme Court in Torres v. Lynch. Because 844I's jurisdictional element does exactly what it's supposed to do, Congress had the authority under the Commerce Clause to enact the statute. And when Congress has the authority to enact a statute, the Tenth Amendment cannot be used to invalidate it. That's Comstock. Your Honors, there are no other questions. The government rests on its written submission. I do have a question. I know we're hearing a facial challenge, but what policy goal is served by prosecuting these defendants in federal court versus state court? The policy is that we're protecting buildings that are engaged in interstate commerce. There is certainly a state statute that could have been applied, but these were two buildings. The first building was the Wisconsin Manufacturers and Commerce Building. It was a headquarters building in Madison, Wisconsin. The second building was a residential, a dual-use rental property. So it was occupied apartments in the upper level, and then it had a retail establishment on the lower level. It had a Chalmers Jewelry Store. These buildings were certainly used in interstate commerce or used in activities that affect interstate commerce, and that was the reason why federal prosecution was chosen in this case. Thank you. The government rests on its written submission. Thank you. Ms. White. I suppose I'll pick up where I left off, looking at the rational basis test. As I explained in the briefs, the Supreme Court has not indicated that the rational basis test should be applied. In fact, in Lopez and Morrison, the majority explicitly, or at least implicitly, did not use the rational basis test. And I was thinking this morning about why that would be, and I think the answer is very similar to that, why I think as-applied challenges are just not something that should properly be brought under the Commerce Clause. The rational basis test is generally used in an equal protection context. It looks at the motivation of the policy behind or the stated policy behind Congress's passing of a certain statute, and it looks to that to determine, in part, whether the statute is discriminatory. When it comes to the Commerce Clause, this court cannot defer to Congress's view of what falls within or outside its Commerce Clause powers. That's the court's job. We've known that since this court was created. And so you can't look to whether Congress had a rational basis for believing that this statute fell within the Commerce Clause. That's the court's job, and I'd ask the court to do that here. Thank you, Ms. White. Thank you. Thanks to both counsel. The case will be taken under advisement.